RAYMOND C. PRESTON et ux., appellees, v. DAVID E. OLIPHANT, appellant.

No. 51266.

(Reported in 126 N.W.2d 329)

FEBRUARY 11, 1964.

Birdsall, Pickett & McLendon, of Waterloo, for appellant.

Pike, Hoxie, Butler & Teske, of Waterloo, for appellees.

PETERSON, J.—This is an action at law, tried to the court, in which plaintiffs pray for judgment against defendant in the amount of $581.02. Plaintiffs purchased a lot from defendant for the sum of $5000 and claim that in connection with such purchase defendant agreed to pay all assessments made against the lot for special improvements. Defendant denies he agreed to pay for concrete paving ordered by the city. Trial court decided in favor of plaintiffs and rendered judgment against defendant for the above stated amount. Defendant appealed.

Defendant assigned three errors as to the decision of the court. 1. In holding the parties had contracted with reference to any future pavement. 2. In holding that the use of the phrase "hard-surfaced" cannot be reasonably interpreted to mean a gravel road. 3. In not holding that all oral agreements between the parties were merged in the warranty deed delivered by defendant to plaintiffs. Appellant's counsel stated in oral argu-

ment he was not urging this assignment so we will not give it attention.

In October 1961 plaintiffs were talking with a contractor by the name of Don Fairbanks about building a new home for them. They inquired of him as to where they might find a suitable lot for such a new house. He referred them to defendant, who had just opened up a new addition in Waterloo. They called on defendant and he showed them his plat and particularly a lot known as Lot 17 in Baltimore Heights First Addition to Waterloo. This was a corner lot which abutted on West Sixth Street and Easton Avenue. He stated his price was $5000. He said the price included the cost of all special assessments, including paving. At this first conversation they told him it would be necessary for them to sell their present house before they bought a lot and built a new home.

About ten days later plaintiffs again called on defendant and said they had sold their house and were now ready to buy the lot. They told him they had arranged with the Peoples Mutual Savings & Loan Association for a loan on their new home and asked him to leave the abstract with said association. They told him after the abstract had been examined and approved he could leave his deed with the association and Mr. Burd, the secretary of the association, would pay him the $5000.

These transactions were all concluded, and plaintiffs proceeded to build their home. Defendant paid for the curbing and the sewer and a short time afterward the street was paved with concrete. Notices of the assessment in the amount of $425.12 for paving on Easton Avenue and $155.90 for paving on West Sixth Street were sent to plaintiffs in due course. They sent the notices to defendant for payment. Defendant refused to make payment claiming that all he had agreed to do as to paving was to put in six inches of crushed rock on the street. This action followed.

As far as the legal questions in this case are concerned they are basic and elementary. When appellant raises the question that the court had erred in deciding in favor of plaintiffs he failed to take into consideration that the case was tried at law to the court. We have recently adopted rule 344(f) which pro-

vides that certain propositions are deemed so well established that authorities need not be cited in support of any of them. Paragraph 1 states: "Findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence."

As a matter of emphasis we will therefore cite only one recent decision sustaining this proposition of law. Harlan Production Credit Assn. v. Schroeder Elevator Co., 253 Iowa 345, 348, 112 N.W.2d 320. This was an action tried to the court. Quoting briefly we said: "The trial court's decision on the facts has the effect of a jury verdict. * * * The court's decision on the facts must stand unless plaintiff was entitled to recover as a matter of law or, stated in another way, unless it would have been entitled to a directed verdict if there had been a jury trial. Our problem is not whether the evidence is sufficient to permit recovery but whether it is so persuasive as to require it."

The question confronting this court, therefore, is whether the findings of fact by the trial court were supported by substantial evidence. Since the answer to this question is decisive as to the case, we will quote briefly from the record. Mr. Preston testified:

"Q. When he [Oliphant] said there would be no more assessments did he make any statement to you as to what there would be no assessments for? A. Well, I asked him about the road. The road wasn't in yet and I said, 'What about the road?' 'Now' I said, 'Would we have to take care of that and pay that?' He said, 'No, that's all taken care of.' * * *

"Q. * * * I said, 'There isn't any street there now. What is proposed for a street, and so forth?' 'Well, this storm sewer, and the curb; and there will be a paved, or hard-surfaced street.'"

Mr. Charles Burd, secretary of the Peoples Mutual Savings & Loan Association, testified:

"Q. * * * Would you state what Mr. Oliphant's answer was to your question as to who was going to pay for those future paving assessments on those two streets? A. Mr. Oliphant stated in answer to the question as to who would be responsible for the

payment of the cost of paving, his answer was that he would be responsible for the payment of the pavement."

On cross-examination he said:

"Q. Now are you sure, now that you have had a chance to reflect somewhat, are you sure of the usage of the word 'surfacing of the streets,' or 'paving of streets'? Did Mr. Oliphant assure you that these streets would be surfaced, or that they would be blacktopped, or that they would be paved? A. I'll give the answer that I gave before Frank. I believe that it was upon my questioning that I received Mr. Oliphant's answer, that the cost of paving would be borne by himself."

Mrs. Raymond C. Preston testified as follows:

"Q. And did he tell you that he was responsible for paying for the street improvements, and the surfacing as it was shown on the plat as the city had approved? A. He told us no assessments, and hard surface.

"Q. Did he ever use the word 'paving', or did he just say 'street surfacing?' A. Hard surfaced."

Mr. Don Fairbanks, the contractor, testified:

"Q. What, if anything, did he [Oliphant] say with reference to the payment of the cost of surfacing West Sixth and Easton? A. Well, naturally he would absorb the cost. I mean that was in the program. 'All assessments are paid, and will be paid for storm sewer, and for the curb, for hard-surfaced street,' and also that all the assessments would be taken care of, and the intersection of Sixth would also be taken care of, and there wouldn't be any assessments against this property at the cost of $5000."

In his testimony defendant, Mr. Oliphant, denied he had made the promises as above outlined. However, it appears clearly from the record that four witnesses testified positively that Mr. Oliphant agreed to pay for any special assessments, including paving of the street. Mr. Oliphant testified that when he sold the lot to plaintiffs no concrete or hard surfacing pavement was contemplated or had been ordered. Mrs. Preston testified that before they finally closed their transaction with defendant they had been informed by owners of neighboring lots that a petition for concrete paving had been filed with the city. Whether

Mr. Oliphant knew about it would be immaterial in the face of his very broad statements as to payment for hard surfacing pavement or for concrete paving.

There is no question from the evidence but what the findings of fact by the trial court were sustained by substantial evidence and, under numerous decisions of this court, such findings of fact are binding upon us.

Defendant contends the trial court was in error in using the phrase "hard-surfaced" in his findings of fact and in holding that the term could be reasonably interpreted to mean a gravel road. Defendant admits, without question, that he had agreed to put in a rock or gravel road around the property. What he denies is that he had ever agreed to pay for any concrete paving. Appellant quotes a definition from Webster's Third New International Dictionary holding that the word "hard-surfaced" could also include "graveling." While we do not find a specific decision of our court differentiating as between gravel and rock on one hand and concrete on the other, the question was given attention, and is directly in point as to the case at bar, in Farley v. Old Homestead, Inc., 170 La. 389, 391, 127 So. 878, where the court said: "The evidence shows that defendant has placed loose gravel on said avenue for the distance agreed upon * * *. And the only expert testimony in the record is that gravel is only a temporary surface, and that a hard-surface means an unyielding surface impervious to wind or water; and this we think is correct. We are referred to several authorities from other states holding that gravel is paving and even hard-surfaced paving; but we prefer to follow a former holding of our own, * * * because we think it is more consistent with fact; and that former holding was that loose gravel laid upon a road, unmixed with sand and cement, cannot be considered as paving at all and therefore much less as hard-surface paving."

This case would appear to be much better authority for the proposition that loose gravel or crushed rock road is not a "hard-surfaced" road than the dictionary authority relied on by appellant.

What is a hard-surfaced road must be determined with

reference to the surrounding circumstances. The lot in question was located within the city limits of the City of Waterloo. Other lots in the same general area as the lot in question were selling for the identical price of $5000 and these other lots were bounded by paved streets. The appellant asked and received $5000 for the lot in question. It is reasonable to assume that when a person pays $5000 for a city lot he does not expect to have a crushed rock road in front of his home.

The findings of fact by the trial court and also the conclusions of law were correct and are affirmed.—Affirmed.

All JUSTICES concur.